IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Scott Klein, ) | Civil Action No. 2:14-cv-2045-DCN-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Scott Klein, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 40 years old on his alleged disability onset date of June 4, 2004. (R. at 19, 27.) Plaintiff claims disability due to, *inter alia*, spinal stenosis and depression. (R. at 21.) Plaintiff attended one year of college and has past relevant work as an electrician. (R. at 27, 78-79.)

Plaintiff filed an application for DIB on January 11, 2011. (R. at 19.) After his application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on August 30, 2012. (R. at 19.) In a decision dated November 30, 2012, the ALJ found that Plaintiff was not disabled. (R. at 19-29.) The Appeals Council denied Plaintiff's request for review, (R. at 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant last met the insured status requirements of the Social Security Act on September 30, 2010.
>
> (2) Claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 4, 2004 through his date last insured of September 30, 2010 (20 CFR 404.1571 *et seq*.).
>
> (3) Through the date last insured, claimant had the following severe impairments: spinal stenosis and depression (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through the date last insured, claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except claimant could stand or walk for 1 to 2 hours and sit for 8-hours with normal breaks in an 8-hour workday. He must be allowed to exercise a sit/stand option, (as follows: he must be allowed to sit or stand consistent with the exertional limits described above; he cannot be off task more than five percent of the work period (this is above and beyond normal breaks, calculates to three minutes per hour per each two hour segment of work time, this three minutes is scattered through a particular hour in the exercise of the sit/stand option, i.e., changing from sitting to standing or walking and vice versa; cannot leave work station during exercise of sit/stand option; could sit between 45 to 60 minutes at one time, and stand or walk for up to 30-minute time segments at one time). He could operate push or pull controls with his upper extremities frequently, bilaterally and operate foot controls with his lower extremities occasionally, bilaterally. He could climb ramps or stairs occasionally, but never climb ladders, ropes, or scaffolds. Claimant could stoop, kneel, or crawl occasionally, but never crouch. He could balance for one-half of work period (4-hours in an 8-hour workday) and reach overhead bilaterally occasionally. Claimant should avoid even moderate exposure to extreme cold and concentrated exposure to excessive vibration, use of moving machinery, and unprotected heights. He is limited to performing routine work tasks.

(6) Through the date last insured, claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7) Claimant was born on December 6, 1963 and was 46 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

(8) Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

(11) Claimant was not under a disability, as defined in the Social Security Act, at any time from June 4, 2004, the alleged onset date, through September 30, 2010, the date last insured (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment

which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

4

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, Plaintiff asserts the ALJ "improperly rejected" the opinions of Plaintiff's "long-term primary treating physician" and failed "to provide adequate reasons" for his determination on Plaintiff's credibility. (Dkt. No. 12 at 20, 30 of 34.) Plaintiff further asserts the ALJ erred in "completely ignor[ing] the supporting statement of [Plaintiff's] foreman" and in "rel[ying] on an opinion under the mistaken impression that it applies to the relevant time period, when in fact it does not." (Dkt. No. 12 at 32, 34 of 34.)

### A.    Treating Physician's Opinions

Dr. Hedden is, as Plaintiff notes, Plaintiff's long-term primary treating physician. (See Dkt. No. 12 at 20 of 34; R. at 25, 41-42, 69.) The record contains several opinions from Dr. Hedden. The first one is dated March 13, 2007. (See R. at 320-21.) Dr. Hedden listed Plaintiff's diagnosis as spinal stenosis and subjective symptoms as "low back pain." (R. at 320.) As to the nature of treatment, Dr. Hedden wrote "monitor medications." (Id.) Dr. Hedden rated Plaintiff's mental impairment as "Class 1," meaning Plaintiff "is able to function under stress and engage in interpersonal relations (no limitations)." (R. at 321.) Dr. Hedden rated Plaintiff's physical impairment as "Class 5," meaning "[s]evere limitation of functional capacity[,] incapable of minimal (sedentary) activity." (Id.) Dr. Hedden opined that Plaintiff was "now totally disabled" from Plaintiff's job as well as any other job. (Id.) He stated that Plaintiff has constant pain and has to frequently lie down. (Id.) Dr. Hedden indicated that Plaintiff was not a suitable candidate for further rehabilitation services. (Id.)

5

On December 19, 2008, Dr. Hedden completed an Attending Physician's Statement of Functionality. (See R. at 318-19.) Therein, he listed Plaintiff's primary diagnosis as spinal stenosis and Plaintiff's subjective symptoms as low back pain and thigh pain. (R. at 318.) Under "physical examination findings," Dr. Hedden wrote: "chronic back pain with radiation into legs with associated weakness." (Id.) He noted that he had been treating Plaintiff for his condition for six years and that Plaintiff had been referred to several other physicians. (Id.) Dr. Hedden further noted that surgery was performed on Plaintiff in November of 2004. (Id.) He indicated that Plaintiff was able to sit eight hours per day in the general workplace environment as well as frequently finger and reach at the waist or desk level. (R. at 319.) Dr. Hedden also indicated that Plaintiff could occasionally lift and carry up to twenty pounds but never lift or carry anything above that weight. (Id.) He stated that Plaintiff could frequently drive but never bend at waist, kneel, or stoop. (Id.) Dr. Hedden stated that Plaintiff could participate in vocational rehabilitation services and did not have a psychiatric or cognitive impairment. (Id.)

On July 26, 2010, Dr. Hedden completed an Attending Physician's Statement of Continued Disability. (R. at 322-23.) Therein, Dr. Hedden stated that Plaintiff was able to sit, stand, and walk zero hours a day in the general workplace environment. (R. at 322.) He also stated that Plaintiff could never lift or carry anything one pound or over, never kneel or crouch, never reach, and never perform fingering or handling. (Id.) He opined that Plaintiff could occasionally drive. (Id.) As to the expected duration of the restrictions and impairments listed, Dr. Hedden wrote "lifetime." (Id.) He opined that Plaintiff could participate in vocational rehabilitation services. (Id.) Dr. Hedden listed Plaintiff's primary diagnosis as spinal stenosis and Plaintiff's current subjective symptoms as low back pain and thigh pain. (R. at 323.) As to Dr. Hedden's current physical examination findings, Dr. Hedden noted that Plaintiff complained of low back pain that increased with movement and radiated to his thighs. (Id.) He listed the current treatment plan as "meds." (Id.)

On March 29, 2011, Dr. Hedden completed a questionnaire concerning Plaintiff's mental impairment. (See R. at 339.) Dr. Hedden stated that Plaintiff's diagnosis was depression and that

6

Plaintiff had been prescribed amitriptyline, which had helped Plaintiff's condition. (Id.) Dr. Hedden did not recommend psychiatric care and indicated that Plaintiff was capable of managing his funds. (Id.) Dr. Hedden opined that Plaintiff had intact thought process, appropriate thought content, good attention and concentration, and good memory, but a depressed mood. (Id.) He further opined that Plaintiff's work-related limitation in function due to Plaintiff's mental condition was "slight." (Id.)

Finally, the record contains a January 2, 2012 statement from Dr. Hedden. (R. at 359.) That statement provides as follows:

> I have been treating Scott Klein for many years for multiple problems. His central disabling problem is his back. He developed a serious back problem several years ago. I encouraged him to get an operation and try to get this problem resolved and he was determined to get it fixed. Unfortunately the operation did not relieve his problem. A 2004 MRI of his back showed canal stenosis caused by a compression of the bulging annulus and a congenitally narrow canal, which caused compression on the L5 nerve roots bilaterally.
> He had surgery for this in late 2004, but, as will happen with back surgery sometimes, the surgery did not relieve the problem. I have been seeing him regularly from that day to this and prescribing fairly significant pain medication in order to attempt to control his problem. However, unfortunately, he is in obvious discomfort every time he comes to the office, having difficulty even climbing up on the examination table or sitting on it comfortably. He tells me he has to frequently lie down for several hours, of an eight hour period and I am sure that is correct. And he has been telling me these things and having these problems from before the date of surgery up through the present. His complaints and the descriptions of his problems have been consistent over time, and they are also consistent with the sort of problem one would expect in light of his MRI and the residuals you often see from back surgery. One can remove the compression from the nerve, but if the nerve is damaged, the patient will continue to have pain. In light of his severe physical problem, he does not have much of a life and it is only natural that he is depressed.
> The exact degree of loss of function as a result from the depression, as opposed to his physical problems, are hard to measure, but I am satisfied they are significant.
> Scott has always been fully cooperative with treatment and has done the best he can to get himself back to full function. . . .

(R. at 359.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; see also 20 C.F.R. § 404.1527. The regulation, known as the "Treating

Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; see also 20 CFR § 404.1527(c)(2).

In the instant case, the ALJ delineated Dr. Hedden's opinions as they relate to Plaintiff's spinal stenosis. (See R. at 25.) Although the ALJ described Dr. Hedden's opinions, the written decision contains next to no analysis of these opinions. As to Dr. Hedden, the ALJ stated,

> I assign less weight to Dr. Hedden's opinions, as his opinions appear to rely on claimant's subjective complaints as opposed to his treatment notes. His treatment notes reflect claimant reported chronic back pain with constant discomfort; however, he was treated conservatively prior to the date last insured with prescription pain medications (Exhibit 17F, p.8).

(R. at 25.) The undersigned concludes this analysis–of the opinions of a physician who treated Plaintiff over a span of many years–is inadequate. In her brief, the Commissioner presents many reasons for discounting Dr. Hedden's opinions, but of course, the ALJ only lists two reasons. See Bray v. Comm'r, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative

law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); see also SSR 96-2p, 1996 WL 374188, at *5 (ALJ's decision itself must "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); Ellis v. Astrue, Civ. A. No. 3:07-3996-CMC-JRM, 2009 WL 578539 at *8 (D.S.C. Mar. 5, 2009) (rejecting post hoc rationale for ALJ's decision).

Furthermore, the reasons the ALJ did provide for rejecting Dr. Hedden's opinions do not constitute "good reasons" for rejecting those opinions. The ALJ states that Dr. Hedden's opinions "appear to rely on claimant's subjective complaints as opposed to treatment notes." (R. at 25.) The ALJ did not identify the treatment notes to which he alludes. The undersigned notes that the record does contain an MRI report, dated June 10, 2004, from Dr. Ceballos, a radiologist; that report lists Dr. Ceballos' impression as, *inter alia*,

> Multilevel congenital canal stenosis which is worse at the L4-5 level due to a superimposed bulging annulus causing triangular compression of the thecal sac with possible impression upon the thecal origins of the L5 nerve roots bilaterally. In addition, there is impression upon the exiting left L4 nerve root.

(R. at 266.) The ALJ also stated that he assigned "less weight" to Dr. Hedden's opinions because Plaintiff "was treated conservatively prior to the date last insured with prescription pain medications." (R. at 25.) Contrary to the ALJ's statement, however, Plaintiff was not treated conservatively. Certainly, Plaintiff was prescribed various medications for his pain. (See, e.g., R. at 331.) But during the at-issue period, Plaintiff also had surgery on his back; he had a decompression lumbar laminectomy on November 30, 2004. (See R. at 302-04, 310.) The "discharge diagnosis" for that surgery was "L5 radiculopathy, status post decompressive laminectomy and bilateral foraminotomy." (R. at 303.) The first reason listed by the ALJ for giving Dr. Hedden's opinions "less weight" is vague, and the second listed reason is simply incorrect. This evaluation of Plaintiff's

longstanding treating physician simply does not satisfy the requirements of the treating physician rule. See, e.g., Wall v. Colvin, Civ. A. No. 8:12-3152-RMG, 2014 WL 517461, at *6 (D.S.C. Feb. 7, 2014) (the ALJ's "evaluation of the expert opinions . . . falls far short of the clearly established standards of the Treating Physician Rule" where, *inter alia*, "the opinions of Dr. Netherton, Plaintiff's long-serving treating-specialist physician, were largely dismissed without reference to the standards of the Treating Physician Rule," and "[n]o weight was noted to be given for Dr. Netherton's treating relationship or the fact that he is a pain specialist"). Accordingly, the undersigned recommends remand.

### B.     Credibility

Plaintiff also asserts the ALJ failed "to provide adequate reasons" for his determination on Plaintiff's credibility. (Dkt. No. 12 at 30 of 34.) As stated in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. First, the plaintiff must present "objective medical evidence showing the existence of a medical impairment(s) which results from the anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citations omitted). The Fourth Circuit explained as follows:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

Craig, 76 F.3d at 595; see also SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").

In the instant case, the ALJ's credibility analysis is conclusory. The ALJ noted Plaintiff's testimony that, *inter alia*, he "experiences pain in his lower back that radiates into his legs and both knees," and "[i]f he grips something tightly, he feels pain in the tendons of his back." (R. at 26.) The ALJ also noted Plaintiff's testimony that he "could sit for two hours; stand for no more than one hour, and walk one hour to an hour and a half." (Id.) As to Plaintiff's credibility, the ALJ stated,

> In terms of claimant's allegations, I find his testimony and assertions to be generally credible; however, the record reflects he retained the ability to work prior to his date last insured. I note the claimant's condition has worsened; however, his decline did not occur prior to the date last insured.
>
> After careful consideration of the evidence, I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Id.)

The ALJ stated that Plaintiff "retained the ability to work prior to his date last insured," but he failed to point to any specific evidence to support that conclusion. (Id.) The ALJ stated that the "claimant's condition has worsened," but again he failed to point to any evidence in the record to support such a determination. (Id.) There is little more to be analyzed about the Plaintiff's credibility analysis; the ALJ said little, so there is very little to review. Such a cursory analysis of Plaintiff's credibility cannot stand. See SSR 96-7p, 1996 WL 374186, at * 3 ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. . . ." (emphasis added)); id. at *4 ("The . . . decision *must* contain *specific reasons* for the finding on

11

credibility, *supported by the evidence* in the case record, and must be *sufficiently specific* to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision."(emphasis added)); see also Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015) ("Nowhere . . . does the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity. The ALJ's lack of explanation requires remand.").

### C.    Remaining Claims of Error

Because the Court finds the ALJ's analysis of Dr. Hedden's opinions and of Plaintiff's credibility to be sufficient bases to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error: that the ALJ erred in "completely ignor[ing] the supporting statement of [Plaintiff's] foreman" and in "rel[ying] on an opinion under the mistaken impression that it applies to the relevant time period, when in fact it does not." (Dkt. No. 12 at 32, 34 of 34.)

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 28, 2015
Charleston, South Carolina

12